The next case today is Thomas Daggett v. York County et al. Appeal number 21-1374. Attorney Hanley, please introduce yourself for the record and proceed with your argument. Good afternoon. I am Attorney Christine Hanley on behalf of Appellant Thomas Daggett. May it please the Court, may I please reserve two minutes for rebuttal? Yes. Thank you. So notwithstanding the District Court's order, Mr. Daggett asserts that there remain at least two distinct constitutional claims that should have survived summary judgment. The first claim that Mr. Daggett believes should have survived summary judgment is the Fourth Amendment unreasonable seizure effectuated by Officer Poore and the Fourteenth Amendment pretrial detention lack of medical care. With respect to the Fourth Amendment unlawful seizure claim, Mr. Daggett contends that Officer Poore did not have probable cause to effectuate the warrantless arrest based on the allegation of the violation of the protective order. As the Court's aware, probable cause requires, the question is whether a reasonable officer with all surrounding circumstances believes that there's a substantial chance of criminal action. Normally, the probable cause question is whether criminal action has occurred in general and does not have to be specific to that defendant, but in this case, because it was a violation of a protective order, there also had to be probable cause that it was actually Thomas Daggett that caused the conduct, because he was not arrested for disorderly conduct or criminal mischief based on the trash. It is Mr. Daggett's contention that sufficient probable cause did not exist at the time of the arrest. There was the phone call. There was the officer's corroboration of the existence of the protective order barring him from the property. There were items strewn throughout, so why wasn't it reasonable for the police officer to infer that that had happened as a result of him being on the property? At the time of the officer's arrest, there was the 911 call to dispatcher, which was then relayed to Officer Poore, and then there were the items strewn around and the existence of the protective order. It's appellant's contention that there was not sufficient probable cause at the time that he was actually on the property in violation of that order. So why was it reasonable to infer that he had been on the property because the items themselves were on the property? Are you saying that a more reasonable inference would have been that he threw the items onto the property from the street? And that an unreasonable inference was not just the opposite? Two reasons that the connection failed. One is the lack of confirmation that he was actually the one responsible for strewing those items on the property, and then the possibility that it occurred from outside of the property. Wasn't he also observed walking to the car with items? I believe when the officer appeared, he was observed walking across the, in front of the property, yes. With items? I do not recall that specific allegation, Your Honor. But he was there with another person as well, who would not have been in violation of an order being on the property. If I may turn to the 14th Amendment, pretrial detention, lack of care. Mr. Daggett agrees that the court was correct in determining that he had a serious medical need by nature of his body. Mr. Daggett contends that the court was incorrect to conclude that there was not deliberate indifference shown. Mr. Daggett would argue that the application of the higher standard regarding mistreatment of the condition as opposed to non-treatment is misplaced in his case because he was exhibiting physical signs that the treatment was not effective and that he was suffering deterioration from his illness. I think there remains the large issue of causation. Obviously, if the causation piece is not, if as the lower court contends the causation is not drawn, that flows to basically most of the arguments of this case. And so with respect to the causation piece, appellant Thomas Daggett believes that he has at least generated a genuine issue of material fact as the causation regarding his lack of receiving medication or receiving the wrong dose of the medication and that that can be based on the information that is contained in the record, at least with respect to the deterioration of his physical health that happened while he was in custody, which then led to the physical injury in the manner in which he was placed in the cell. So for the reasons argued in the brief, appellant acknowledges that there are some limitations to some of the other counts contained in the pleadings, but for the reasons argued in the brief, appellant believes that the constitutional violations related to the 4th and 14th Amendment at least should survive summary judgment and that would include counts 4, 5, 6, 10, and 11. I see I'm close to up with my time. If the court does not have any more questions, I will rest on the brief. Thank you, Ms. Hanley. Attorney Hanley should mute her audio and video at this time, and Attorney Park should unmute and introduce herself on the record to begin. Good afternoon. Kasia Park for appellees Town of Berwick, Officer Eli Poore, and Chief Timothy Town. May I proceed? Yes, please. Thank you. This court should affirm the district court's entry of summary judgment for the Berwick defendants, and I'll be specifically addressing the 4th Amendment claim against Officer Poore, and if there's time, the 14th Amendment claim against Officer Poore. Here, there was clearly probable cause for the arrest. To answer a question that was raised, it is in the record that Officer Poore observed Mr. Daggett walking near the mailbox into the ditch and into the passenger car, and he was holding an item in his hand. It was a white item, and that's on page 63 of the appendix, where Mr. Daggett admitted that he was carrying an object. So, it was reasonable for the officer to infer that he had been on the property and had caused the disruption with the trash. In addition... Ms. Park, do we know where the trash was? Was it on the property, or was it in the right-of-way? Did he have to walk onto the property to get the white implement? Your Honor, I don't think the record is clear as to where Mr. Daggett had to walk to get the white item, but the record and the video shows the trash in the ditch and on the area right by the mailbox. But to be clear, the district court, in reaching the conclusion that there was probable cause, assumed that Mr. Daggett was not actually on the property. And that's important, I think, because the totality of the circumstances has to be considered. So, even if there was a mistake on Officer Poore's position as to whether Mr. Daggett was actually on the property, the protection from abuse, the protective order, was broader than just on the property. It was on the property of the premises of 317 Cranberry Road. And in addition, if there was a mistake as to the exact property line, Officer Poore would clearly be entitled to qualified immunity here. I missed the point. What's the difference between property and premises that would include the street or the right-of-way? I think by its plain language, on the property or on the premises, premises would imply that the violation could occur if they were standing right on the property line or right near it. I think it implies that it's a little bit broader because the implication is that they're protecting the occupant or the plaintiff. But like I said, in any event, if there was a mistake as to the exact property line, at the very least, Officer Poore would be entitled to qualified immunity. He's entitled to make a reasonable inference. And based on the totality of the circumstances, that's what occurred here. Given that he confirmed the existence of the protective order, he got the information from the 911 caller that Mr. Daggett was on the property and that he saw Mr. Daggett walking near the mailbox and through the ditch into the car. Did the 911 caller specifically say Daggett was on the property? Yes, Your Honor. So that's your hook, that he's got that information. He does have that information, and I believe once he arrived and saw Mr. Daggett where he was, he could infer it was a reasonable inference that Mr. Daggett had been on the property and he could rely on the witness who observed that. I think Acosta, this court's decision in Acosta, makes it clear that an officer can rely on a witness's information. Unless there's more questions on the Fourth Amendment, I'll briefly address the Fourteenth Amendment claim against Officer Poore. Here, I think the district court said it best. It's hard-pressed to know what Officer Poore could have done, what more he could have done here. Once he knew about Mr. Daggett's condition, he allowed Mr. Daggett to have his hands in front of him. He allowed Mr. Daggett to take a dose of his medication at the police station. He took Mr. Daggett to the hospital, not once but twice to be evaluated. He got cleared by a physician as fit for incarceration. And then once the jail wouldn't accept him without medication, Officer Poore took him back to the hospital to obtain his medication and then gave all the medical paperwork and the medication to the jail and the jail staff. He also knew that the doctors from Southern Maine Health Care had been in communication with the jail medical staff. So it's really difficult to fathom what else he could have done under this situation. And at the very least, no reasonable jury could infer that Officer Poore was deliberately indifferent to Mr. Daggett's medical needs or that any of his actions were conscious shocking in the sense of the Irish standard. Counsel, I believe the district court concluded that Officer Poore relied on the medical professionals. And beyond that, there wasn't much else for him to do. But you do acknowledge, don't you, that that had Officer Poore observed continuing deterioration, that he would not have been absolved from doing anything? Your Honor, I think he was entitled to rely on the medical professionals. I think that is correct, given that he's a police officer. I think, you know, perhaps at some point, if his condition had deteriorated further, then perhaps there would have been an obligation to take him back to the hospital. But at the time he transferred custody of Mr. Daggett to the jail, he had just been evaluated again by Dr. Schmitz, who had cleared him for incarceration. So at that point, I don't think there is any further constitutional duty on Officer Poore to do anything further. And he would be entitled to rely on that previous evaluation that had been deferred. Thank you, Ms. Park. Thank you. If you would unmute. And Attorney Wehrer can introduce himself to the court. Good afternoon, Your Honors. Ben Wehrer for Correct Care Solutions. May I proceed? Please proceed. The District Court, Your Honors, granted summary judgment to Correct Care Solutions, who I'll refer to as CCS, on three independent grounds. And I'm going to just start by talking about the first ground related to the 14th Amendment claim, which was the municipal liability claim. And I think that issue is straightforward, and it's dispositive of Mr. Daggett's claims against my client. Mr. Daggett only brought a claim against CCS, the entity. He did not bring any claims against individual providers. Municipal actors like CCS can only be held liable for municipal acts under Section 1983. As the court knows, there is no respondeat superior under Section 1983. And municipal acts come in the form of policy, custom, or practice. And in this case, the record is undisputed. Mr. Daggett conceded below that he was not aware of any CCS policy, custom, or practice that caused him any harm. He also admitted that he was not claiming that a CCS policy, custom, or practice caused him any harm. And he conceded that he did not have any information regarding the training that CCS provides to its medical professionals. Not only did Mr. Daggett concede these essential elements of his constitutional claim against CCS, his briefing below at the summary judgment stage did not even raise an argument regarding municipal liability in response to CCS's motion for summary judgment. Given these factual concessions, and given his failure to raise any argument below regarding municipal liability, the district court was absolutely correct in holding that Mr. Daggett's 14th Amendment claim against CCS could not withstand summary judgment, and in granting CCS's motion for summary judgment. I'd be happy to answer any questions the court may have regarding the municipal liability claim, or the other independent grounds that the court granted summary judgment for CCS on. Thank you, Mr. Wehrer. Thank you, Your Honors. You may mute, Mr. Wehrer, at this time, and Attorney Wall, if you could please unmute and present to the court. Good afternoon, Your Honors. This is John Wall on behalf of the York County defendants, which includes York County, William King, and Michael Bidiello. May I proceed? Yes, please. I'd like to start my argument by echoing something that Attorney Wehrer just said. Like the CCS defendant, there is no basis for entity liability with regard to the county for similar reasons. There is concessions by the plaintiff, that there is no customer policy that was the moving force behind the alleged violations in this case. And in fact, all of the record evidence indicates that the county had ample policies in place for provision of medical services for inmates. Turning to the individual defendants, in her argument, Ms. Hanley specifically mentioned the evidence of deterioration, which she claims is a key aspect of her client's 14th Amendment claim. It's undisputed that neither King nor Bidiello were present for the plaintiff's stay at the jail, and therefore would not have been aware of what was going on with regard to any deterioration that may have been occurring. So, based on the fact that there was no interaction between King and Bidiello and the plaintiff with regard to his stay at the jail, there is no basis upon which there could be considered deliberately indifferent with regard to whatever medical condition he may have had, nor is there any evidence of any causal connection with regard to the jail's provision of medical services. They made sure the plaintiff had access to medical care, and he in fact was seen by medical professionals at the jail. And the jail is obviously allowed to rely upon that expertise in ensuring that his constitutional rights were protected. Finally, the plaintiff has not addressed nor demonstrated that the individual defendants would not be entitled to qualified immunity. Obviously, the plaintiff bears the burden of demonstrating a violation of a clearly established right, and the plaintiff has not even attempted to do so, let alone meet that burden. So, based upon all of the record evidence that exists in this case, we believe the District Court correctly ruled that summary judgment was appropriate for all of the York County defendants. Unless the Court has any additional questions? Seeing none, thank you, Mr. Wall, for your argument. Thank you. If you would please mute. Ms. Hanley, you've reserved a couple of minutes. Yes, Your Honors. If I may briefly address a few of those points. With respect to Mr. Vitiello, he was directly involved in the discussion about how and whether to take in Mr. Daggett, so he did have knowledge of the situation. Going back to the question about the premises or the residence, the language of the order says that the defendant is prohibited from entering the family residence or premises of the separate residence of the plaintiff. So, I do not think there's a distinction between residence or premises, other than to say if the plaintiff is elsewhere, he can't go there either. So, with respect to the location of her home, I think it's the normal interpretation of the residence and the property. In addition, I just wanted to make a clarification that Judge Woodcock did not assume the fact that Thomas Daggett was not on the property, he just assumed the fact that Officer Poore did not observe him on the property when making his determination about probable cause. Thank you for your time, Your Honors. Thank you all. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the hearing.